**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1982-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEONARD K. JOHNSON, a/k/a
LEONARD K. FLAGG, KEITH
L. FLAGG, KEITH JOHNSON,
LEONARD JOHNSON, and
MARCUS W. FLAGG,

    Defendant-Appellant,

_____

Submitted May 27, 2026 – Decided July 31, 2026

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-09-0825.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Kimberly P. Will, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This matter returns to us after a remand. Defendant Leonard Johnson appeals from the February 21, 2025 Law Division order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. We vacate the February 21, 2025 order and remand the matter for further proceedings.

I.

Tried by a jury, defendant was convicted of the first-degree armed robbery, N.J.S.A. 2C:15-1, of a Vineland bank. The court sentenced defendant to a fifteen-year term, subject to an eighty-five-percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Prior to trial, defendant moved pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), to suppress inculpatory statements he made during an interview with two police officers and a Federal Bureau of Investigation (FBI) agent. Defendant argued his inculpatory statements were made after the officers continued to interrogate him despite his invocation of his right to remain silent. In support of his motion, defendant relied on several statements, including an exchange he had with the officers shortly after the FBI agent entered the room

approximately thirty minutes into a nearly four-hour interview. During the exchange, defendant said in response to questions from the officers, "I don't have anything to say about it[,]" "I'm saying, if we've got to go to court, that what (inaudible)[,]" and "I don't have anything to say. You all want to ask a question, I'll answer the question."

After reviewing the video recordings and transcript of the entire interrogation, and hearing testimony from the officers, the trial court denied defendant's motion. In an oral decision, the court found defendant made a knowing and voluntary waiver of his <u>Miranda</u> rights prior to the start of the interrogation. Turning to whether defendant invoked his right to remain silent during the interrogation, the court found,

> this entire motion boils down to a couple of instances contained in [the transcript,] and defense counsel has pointed out, they appear in a number of pages in the transcript. First and foremost, I think is . . . page 13 and lines 16 through 19, and on page 16, lines 24 through 42. These are the areas where, as argued by counsel, the defendant made statements.

This was a reference by the court to the exchange approximately thirty minutes into the interview detailed above. Viewing the cited passages in the context of the immediately preceding discussion between defendant and the officers, the court found defendant did not invoke his right to remain silent.

A-1982-24

Although its decision acknowledges defense counsel argued a number of defendant's statements constituted invocations of his right to remain silent, the trial court did not analyze any other statement by defendant. Defendant's trial counsel, who was present when the court issued its decision, did not object to the court's failure to address the other statements on which he relied in support of the motion to suppress. Trial counsel made no further effort to bring the apparent oversight to the court's attention. As a result of the denial of the motion, defendant's inculpatory statements were admitted as evidence at trial.

We affirmed the denial of defendant's motion to suppress, as well as his conviction and sentence. State v. Johnson, No. A-2312-17 (App. Div. Jan. 13, 2020) (Johnson I). Our decision on the suppression motion was based on the statements defendant made during his exchange with the officers at approximately the thirty-minute mark in the interrogation, which we described as "the specific portion of the interview he identifies as his statement that he no longer wanted to answer questions . . . ." Id. slip op. at 15. The narrow scope of our review reflected both the trial court's limited decision and defendant's appellate brief, which relied only on the exchange analyzed by the trial court for its argument defendant's inculpatory statements should have been suppressed.

A-1982-24

The Supreme Court denied defendant's petition for certification. State v. Johnson, 243 N.J. 259 (2020). Justice Albin issued a dissent from the denial of certification. Id. at 259-62. After recounting defendant's unsuccessful motion to suppress and this court's decision, Justice Albin stated:

> The trial court and Appellate Division, however, failed to consider Johnson's seemingly unambiguous assertion of his right to remain silent later in the interrogation. Significantly, Johnson's appellate and trial counsel apparently never brought that part of the interrogation to the courts' attention.
>
> [Id. at 260.]

The Justice then "detail[ed] the critical part of the colloquy overlooked by counsel and the courts that raises a substantial question under our jurisprudence." Ibid. Justice Albin recounted an exchange between defendant and a detective beginning at approximately the fifty-minute mark of the recording of the interrogation. Id. at 260-61. During that exchange, in response to a statement by the detective intended to illicit a confession, defendant said "I have nothing to say." Id. at 261. The officers continued to interrogate defendant after he made that statement.

Justice Albin expressed the view defendant's statement was a clear invocation of his right to remain silent ignored by the officers, warranting a

5

grant of certification for correction of a plain error. Id. at 261-62. The Justice

concluded,

> [a]lthough the majority has voted not to grant Johnson's petition for certification, he is not without a remedy. In a post-conviction-relief petition, he can still seek relief on the claim that his counsel rendered ineffective assistance of counsel by not bringing to the courts' attention Johnson's later attempt to invoke his right to remain silent in words a layperson – not a constitutional scholar – would use.
>
> [Id. at 262.]

Defendant subsequently filed a PCR petition in the Law Division. He

alleged his trial and appellate counsel were ineffective for failing to argue the

statement identified by Justice Albin was an unequivocal invocation of his right

to remain silent ignored by the officers.[1]

The PCR court dismissed the petition without holding an evidentiary

hearing. In a written decision, the PCR court concluded the motion court and

this court considered the full recording of defendant's interrogation when

rejecting his claim to have invoked his right to remain silent. The PCR court

continued, "[t]he fact that motion counsel and appellate counsel may have

limited their argument to certain parts of the record appears to have not limited

---

[1] Defendant raised additional claims which were rejected by the PCR court. Defendant did not appeal the rejection of those claims.

A-1982-24

either court since each indicated that they reviewed and considered the entire record."

In addition, the court found if defendant's trial and appellate counsel failed to rely on the purported invocation noted by Justice Albin, they likely did so as a strategic decision, which would not constitute ineffective assistance of counsel. Finally, the PCR court concluded, "The Miranda issue had already been fully vetted by the Appellate Division and as such is barred by R. 3:22-5 for this court to consider it substantively." A September 21, 2022 order memorialized the trial court's decision.

We reversed and remanded for an evidentiary hearing. State v. Johnson, No. A-0665-22 (App. Div. June 10, 2024). We held:

> We have carefully reviewed the record . . . and conclude the PCR court erred when it rejected defendant's ineffective assistance of counsel claims without holding an evidentiary hearing. Defendant set forth with specificity a prima facie case in support of PCR. He alleged that his trial and appellate counsel were ineffective because they failed to identify what he alleges to be a clear invocation of his right to remain silent at about the fifty-minute mark of the interrogation recording. Although the PCR court found that both the motion court and this court considered that purported invocation when rejecting defendant's motion to suppress, a review of our decision does not support that conclusion. We identify only the purported invocation of defendant's right to remain silent shortly after the FBI agent joined the interrogation much earlier than the

7

fifty-minute mark in the recording. The record does not support the conclusion that judicial consideration was given to whether the second purported invocation effectively invoked defendant's right to remain silent.

In addition, the PCR court found that even if trial and appellate counsel failed to identify the later purported invocation, doing so was a strategic decision. This finding, however, was made without the benefit of testimony from trial and appellate counsel. It is not possible on the record before this court to determine if there is sufficient support for the PCR court's finding on this point.

Finally, in order to determine whether defendant is entitled to PCR, the PCR court must determine whether, if trial and appellate counsel failed to raise the second purported invocation, either as a matter of strategy or through oversight, their failure to do so led to a result that would not otherwise have occurred. Put another way, the PCR court must determine whether the motion court or this court would have suppressed defendant's inculpatory statements had his counsel relied on the second purported invocation.

[(slip op. at 9-10).]

On remand, the PCR court held an evidentiary hearing at which only defendant's trial counsel testified. Defendant's appellate counsel was deceased.

Trial counsel recalled moving to suppress the incriminating statements defendant made to the officers during the interrogation. Although his identification of the purported invocations he cited in support of the motion was vague, trial counsel ultimately stated he relied on defendant's fifty-minute-mark

statement as an invocation. Relevant portions of the transcript of his PCR hearing testimony provide:

> Q. And what was your basis for argument regarding the suppression motion in this case?
>
> A. [I]t was . . . over a long period of time that they took his statement and there were four times throughout the taking of the statement he said . . . I have nothing to say and they kept after him and questioned him.
>
> . . . .
>
> Q. In arguing that motion, did you point to just one instance of the defendant seemingly invoking his right to silence or multiple?
>
> A. There were[,] I believe[,] four instances during his testimony [(sic)]. He said, "I have nothing to say." I mean, he didn't specifically say that four times, but he stated I have nothing to say, you know, I'm not lying[,] and things to that effect.
>
> . . . .
>
> Q. The Appellate Division in this matter has identified an instance on the defendant's statement at roughly the [fifty-]minute mark of the interrogation where the defendant utters the phrase, "I have nothing to say." Did you make mention of this instance at the suppression motion in this case?
>
> A. I made reference in my argument to the court that there were three or four – three – probably four times throughout the testimony [(sic)]. And you have to understand, it was [not] exactly one day. It was through

A-1982-24

a number of days that each time he said, "I have nothing to say."

. . . .

Q.    So to clarify [in the trial court motion transcript] where you refer to defendant indicating that he had nothing to say probably four times. When you said "four times," were you referring to this contested fourth instance of him saying that?

A.    All of the instances that were in the transcript.[2]

Trial counsel conceded he did not think emphasis on defendant's fifty-minute-mark statement would have changed the outcome of the suppression motion:

Q.    Do you think that if you had isolated this fourth instance and made additional argument about how this (inaudible) the motion would have been granted?

A.    No.

The State concedes the transcript of defendant's interrogation submitted to the trial court in support of the motion did not include defendant's statement, "I have nothing to say" at the fifty-minute mark. It is not clear why the statement was omitted from the transcript. Our review of the recording revealed the statement was delivered by defendant at a volume much lower than the

---

[2] Trial counsel's reference to the interrogation taking place over several days is not explained in the record.

remainder of his dialogue with the officers, which might explain its omission from the transcript.

Defendant's statement, however, was recorded in the transcript of the motion hearing when the recording of the interrogation was played in court. Notably, in another instance in which the transcript did not contain statements recorded in the video, but which were heard when the recording was played at the motion hearing, the court noted the discrepancy on the record. The court made no such notation with respect to the absence of the fifty-minute-mark statement.

On February 21, 2025, the PCR court issued a written decision denying relief. The court found the recording of defendant's entire interview, including the statement near the fifty-minute mark, was played for the motion court. The PCR court did not find, however, defendant's trial counsel explicitly identified the fifty-minute-mark statement as an invocation of defendant's right to remain silent. Nor did the court find trial counsel alerted the trial court to the existence of the fifty-minute-mark statement when it became clear the court addressed only the earlier purported invocation in its decision denying defendant's motion. Instead, the court found that

> the length of the interview with the defendant was
> estimated around three and one half hours. Trial

counsel's motion to suppress lasted over [six] hours; twice as long as defendant's interview. This indicates trial counsel presented a legally sound and thorough suppression argument, raising the Miranda violation issue at the trial level. The motion being denied does not equate to ineffective assistance, as unsuccessful arguments do not automatically meet the Strickland[ v. Washington, 466 U.S. 668, 686 (1984)] standard. While the outcome of the proceeding may have been different if statements were suppressed, the record does not support a finding that trial counsel's performance fell below an objective standard of reasonableness.

In addition, the PCR court concluded the fifty-minute-mark statement, even if overlooked by trial counsel and the court, was an ambiguous invocation of defendant's right to remain silent, which would not have resulted in suppression of defendant's inculpatory statements. The PCR court found:

> The record suggests that the specific statements at issue were ambiguous and did not unequivocally invoke the right to remain silent. As established in Berghuis v. Thompkins, 560 U.S. 370 (2010), an invocation must be clear and unambiguous. Ambiguous statements fail to trigger the procedural requirements to cease questioning.

With respect to defendant's appellate counsel, the PCR court found:

> The appellate record indicates that counsel did raise issues related to the Miranda challenge on appeal, and their tactical decisions not to focus solely on the ambiguity of the statements reflects a reasonable exercise of professional judgment. Here, [defendant] does not meet the burden of proof imposed by the first prong of Strickland test. Thus, the court finds that

12

appellate counsel's performance in this regard was within the bounds of reasonable professional judgment and does not support the claim of ineffective assistance of counsel.

A February 21, 2025 order memorialized the court's decision. This appeal followed.

Defendant raises the following arguments.

POINT I

AS DEFENDANT HAS SHOWN THAT TRIAL AND APPELLATE COUNSELS WERE PREJUDICIALLY INEFFECTIVE WHEN THEY FAILED TO MAKE A COMPLETE RECORD IN SUPPORT OF HIS MOTION TO SUPPRESS HIS STATEMENT, HE IS ENTITLED TO [PCR].

POINT II

AS THE DECISION ON DIRECT APPEAL WAS ERRONEOUS THAT DEFENDANT HAD NOT INVOKED HIS RIGHT TO REMAIN SILENT AND THE PCR COURT'S FAILURE TO CONSIDER RELEVANT NEW JERSEY CASE LAW LED IT TO A WRONG RESULT, DEFENDANT SUBMITS THAT HE IS ENTITLED TO [PCR].

II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "'substantial

13

denial in the conviction proceedings' of a defendant's state or federal constitutional rights . . . ." Ibid. "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Ibid. (citing State v. Mitchell, 126 N.J. 565, 579 (1992)). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland, 466 U.S. at 686; State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show their attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A-1982-24

A defendant then must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

"We defer to [a] trial court's factual findings made after an evidentiary hearing on a petition for PCR." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Nash, 212 N.J. 518, 540 (2013)). "However, we do not defer to legal conclusions, which we review de novo." State v. Holland, 449 N.J. Super. 427, 434 (App. Div. 2017) (citing Nash, 212 N.J. at 540).

Defendant argues the PCR court erred because the record establishes his trial counsel was deficient when he failed to: (1) present a complete argument to the trial court in support of the motion to suppress with respect to the fifty-

minute-mark statement; (2) ensure the trial court considered the fifty-minute-mark statement as an invocation of his right to remain silent; and (3) create a record of the trial court's having not reviewed the fifty-minute-mark statement.

In addition, defendant argues the PCR court erred because the record establishes his appellate counsel was deficient when he failed to: (1) argue the trial court erred by failing to consider the fifty-minute-mark statement as an invocation of defendant's right to remain silent; (2) urge this court to consider the fifty-minute-mark statement as an invocation of defendant's right to remain silent, even though not considered by the trial court; and (3) move before this court for a remand for consideration by the trial court of the fifty-minute-mark statement as an invocation of defendant's right to remain silent.

Defendant also argues the PCR court erred when it concluded even if his trial and appellate counsel were deficient, defendant was not prejudiced because his fifty-minute-mark statement was ambiguous and, as a result, could not be found to constitute an invocation of his right to remain silent. Defendant argues the PCR court erred when it relied on the holding in Berghuis to reach that conclusion. He contends while Berghuis establishes the federal standard with respect to ambiguous invocations of the right to remain silent, our state Supreme Court adopted a more expansive view of the efficacy of an ambiguous invocation

16

of Fifth Amendment rights.  See State v. S.S., 229 N.J. 360, 382 (2017) ("[A] request, 'however ambiguous,' to terminate questioning . . . must be diligently honored.'") (quoting State v. Bey, 112 N.J. 123, 142 (1988)).  In addition, the court must view an ambiguous invocation in "the full context in which [it was] spoken."  Ibid. (quoting State v. Roman, 382 N.J. Super. 44, 64 (App. Div. 2005)).

Defendant argues had his trial counsel and appellate counsel not been deficient, they would have argued under New Jersey law the fifty-minute-mark statement was, at the very least, "susceptible to two different meanings," requiring the officers to "cease questioning and 'inquire of the suspect as to the correct interpretation'" of his statement.  Id. at 382-83 (quoting State v. Johnson, 120 N.J. 263, 283 (1990)).  According to defendant, because the officers did not stop their interrogation to ascertain the meaning of defendant's statement, non-deficient arguments by his counsel would have resulted in the motion court and this court suppressing his inculpatory statements.

We agree with defendant's arguments.  The record establishes defendant's trial counsel was deficient in arguing the motion to suppress.  While he may have relied on the fifty-minute-mark statement as an invocation of defendant's right to remain silent, trial counsel failed to ensure the court considered that

17

statement when deciding the motion. The transcript of defendant's interrogation submitted in support of the motion was missing the crucial statement, "I have nothing to say" at the fifty-minute mark. Trial counsel apparently did not notice the omission of the very statement he was arguing was an invocation of defendant's rights. The parties have not identified any indication in the record suggesting defendant's trial counsel alerted the court to the omission in the transcript, either when it was submitted to the court, or when the recording of the interrogation was played in court and the error should have been obvious to him.

We cannot determine with confidence the motion court was aware of the fifty-minute-mark statement. As we indicated earlier, our review of the recording revealed the statement was made at a low volume, more softly than the remainder of defendant's dialogue with the officers. And, as noted, the statement was not in the transcript submitted to the court. In another instance in which the transcript did not contain statements the court heard on the recording, the court made note of the discrepancy on the record. No such notation was made by the court with respect to the omission of the fifty-minute-mark statement.

18

In our decision in defendant's direct appeal, we noted the trial court, when discussing the purported invocation near the start of the interrogation, stated, "during my lunch break . . . I re-reviewed the tape because, quite honestly, when the tape was first played to me, I didn't pick up on any of this. . . . I had a transcript in front of me and it went by . . . ." Johnson I, slip op. at 5. Even with an accurate transcript, the court missed the nuances of defendant's earlier exchange with the officers when the recording was played in court.

In addition, the trial court's oral decision suggests our lack of confidence in the court's awareness of the fifty-minute-mark statement is warranted. The court analyzed only the purported invocation near the start of defendant's interrogation. It did not mention the fifty-minute-mark statement, which was made distant in time from the prior statement and during a separate exchange.

As the trial court concluded its decision on the motion, trial counsel made no effort to direct the court's attention to the fifty-minute-mark statement. It was evident the court had not analyzed whether the latter statement was an invocation of defendant's right to remain silent. Trial counsel allowed the court to end its analysis of the motion without consideration of the fifty-minute-mark statement. Trial counsel's failure to ensure each of the statements on which

19

defendant's motion was based was considered by the court was below an objective standard of reasonableness expected of counsel.

Defendant's appellate counsel also did not raise the fifty-minute-mark statement before this court. While the omission is understandable, given the trial court's analysis of only the earlier purported invocation, appellate counsel was deficient in not arguing before this court that the trial court erred when it overlooked the fifty-minute-mark statement. A careful review of the motion record, hearing transcript, and recording of defendant's interrogation would have alerted appellate counsel to this significant avenue to challenge the trial court's decision.

We also agree the PCR court failed to apply New Jersey precedent when it determined whether defendant was prejudiced by his counsels' deficiencies. The PCR court determined the fifty-minute-mark statement was ambiguous, and by virtue of its ambiguity could not be considered an invocation of defendant's right to remain silent. While this conclusion may be true under federal law, the New Jersey Constitution provides greater protections to defendants in this area and requires an in-depth analysis of ambiguous statements to determine if they are an effective invocation of a defendant's right to stop an interrogation. See S.S., 229 N.J. at 382; Bey, 112 N.J. at 142; Roman, 382 N.J. Super. at 64.

A-1982-24

Because the court did not consider the State constitutional precedents, its determination that defendant's fifty-minute-mark statement was not an invocation of his right to remain silent was erroneous.

Having determined defendant's trial and appellate counsel were deficient in their prosecution of his motion to suppress, we remand to the PCR court for a determination of whether their deficiencies prejudiced defendant, entitling him to PCR. Applying New Jersey precedents with respect to ambiguous invocations of the right to remain silent, the PCR court shall determine whether, with non-deficient advocacy by trial and appellate counsel, the trial court or this court would have determined defendant's fifty-minute-mark statement, "I have nothing to say," considered in context, constituted an invocation of his right to terminate the interrogation. If the PCR court so determines, it shall also determine which subsequent inculpatory statements by defendant would have been suppressed and whether, as a result of the suppression of those statements, the outcome of defendant's trial would have been different.

If the PCR court determines defendant established the prejudice prong of the Strickland standard, it shall award appropriate relief. We offer no opinion with respect to the outcome of the remand proceedings.

A-1982-24

The February 21, 2025 order is vacated and the matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-1982-24